# In the United States Court of Federal Claims

No. 16-1378C

Filed: January 18, 2019

| | |
|---|---|
| RICHARD W. ADAMS, *et al.*,    ) | |
|    ) | |
| Plaintiffs,    ) | |
|    ) | Fair Labor Standards Act ("FLSA"); |
| v.    ) | RCFC 56; Customs Officer Pay Reform |
|    ) | Act ("COPRA"); Department of |
| THE UNITED STATES,    ) | Homeland Security Appropriations Act. |
|    ) | |
| Defendant.    ) | |
|    ) | |

*Gregory K. McGillivary*, Counsel of Record, *Molly A. Elkin*, Attorney, *T. Reid Coploff*, Attorney, Woodley & McGillivary LLP, Washington, DC, for plaintiffs.

*Mollie L. Finnan*, Trial Attorney, *Reginald T. Blades*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph A. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Frislanda Goldfeder*, Of Counsel, United States Customs and Border Protection, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiffs, border patrol agents working as canine handlers and instructors, bring this action against the United States alleging that the government has failed to compensate them for overtime worked, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and the Federal Employee Pay Act, 5 U.S.C. §§ 5541-5550 ("Title V"). The government has filed a corrected motion for partial summary judgment and plaintiffs have filed a cross-motion for partial summary judgment on the issue of whether the overtime pay cap in the annual Department of Homeland Security ("DHS") Appropriations Act ("DHS Cap") limits certain plaintiffs' eligibility to earn or receive overtime compensation for each fiscal year within the claim period for this case, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court: (1) **GRANTS** the government's

corrected motion for partial summary judgment on appropriations caps; (2) **DENIES** plaintiff's cross-motion for partial summary judgment on appropriations caps; and (3) **DENIES AS MOOT** the government's motion for partial summary judgment on appropriations caps.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

#### 1.     Plaintiffs' Back-Pay Claims

Plaintiffs—border patrol agents who work as canine handlers or instructors for the United States Customs and Border Protection ("CBP")—filed this action seeking earned, but unpaid, overtime compensation under the FLSA and Title V for work performed during the period 2011-2016.  Def. Mot. at 4.  On April 23, 2018, the parties entered into a settlement agreement that calls for the payment of settlement funds comprised of back-pay, liquidated damages, attorney fees, expenses, and costs to certain plaintiffs (the "Settlement Agreement").  Def. App'x at A1-A11.  The remaining plaintiffs—Roy Lopez, Scott Stacy, and Bryan Trujillo—have not yet resolved their claims and they seek a determination by the Court regarding whether the DHS Cap limits the amount of back-pay that they may receive under the Settlement Agreement.  Pl. Mot. at 2.

Specifically, plaintiff Roy Lopez seeks overtime pay for work performed during the period March 23, 2014, through September 5, 2015.  Pl. Mot. at 6; Def. App'x. at A12.  The parties have agreed to two different amounts to settle this claim.  Def. Mot. at 2-4; Pl. Mot. at 6-7.  First, should the Court determine that the DHS Cap applies, the parties agree that Mr. Lopez will receive $748.12 in back-pay and an equal amount in liquidated damages, resulting in a total award of $1,496.24, and that this amount would not exceed the DHS Cap.  Def. Mot. at 3; Def. App'x at A3-A4; Pl. Mot. at 6.  Second, should the Court determine that the DHS Cap does not apply, the parties agree that Mr. Lopez will receive $8,625.12 in back-pay and an equal amount in liquidated damages, resulting in a total award of $17,270.24, and that this amount would result in Mr. Lopez exceeding the DHS Cap during the relevant claim period.  Def. Mot. at 3; Def.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the government's corrected motion for partial summary judgment on appropriations caps ("Def. Mot."); the Appendix attached thereto ("Def. App'x"); and plaintiffs' cross-motion for partial summary judgment on appropriations caps ("Pl. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

App'x. at A12; Pl. Mot. at 6.

Plaintiff Scott Stacy seeks overtime pay for work performed during the period November 2, 2014, through January 9, 2016.  Pl. Mot. at 6.; Def. Mot. at 3; Def. App'x. at A12.  Should the Court determine that the DHS Cap applies, the parties agree that Mr. Stacy will receive $5,380.72 in back-pay and an equal amount in liquidated damages, resulting in a total award of $10,761.44, and that this amount would not exceed the DHS Cap.  Def. Mot. at 3; Def. App'x at A3-A4.  Def. App'x. at A13; Pl. Mot. at 6.  Should the Court determine that the DHS Cap does not apply, the parties agree that Mr. Stacy will receive $7,044.44 in back-pay and an equal amount in liquidated damages, resulting in a total award of $14,088.88, and that this amount would result in Mr. Stacy exceeding the DHS Cap.  Def. Mot. at 3-4; Def. App'x at A13; Pl. Mot. at 6.

Lastly, plaintiff Bryan Trujillo seeks overtime pay for work performed during the period November 3, 2013, through October 4, 2014.  Pl. Mot. at 7; Def. Mot. at 4; Def. App'x. at A13.  Should the Court determine that the DHS Cap applies, the parties agree that Mr. Trujillo will receive $4,198.96 in back-pay and an equal amount in liquidated damages, resulting in a total award of $8,397.92, and that this amount does not exceed the DHS Cap.  Def. Mot. at 4; Def. App'x at A3-A4.  Should the Court determine that the DHS Cap does not apply, the parties agree that Mr. Trujillo will receive $5,453.76 in back-pay and an equal amount in liquidated damages, resulting in a total award of $10,907.52, and that this amount would result in Mr. Trujillo exceeding the DHS Cap.  Def. Mot. at 4; Def. App'x at A3-A4; Pl. Mot. at 7.

## 2.    Title V And The FLSA

During the period 2011-2016, plaintiffs were eligible to earn various forms of overtime pay, including overtime pay under Title V and the FLSA.[2]  Def. Mot. at 4.

As background, Title V and the FLSA govern hourly overtime compensation for certain federal employees, including customs officers and border patrol agents.  *See generally* 5 U.S.C.

---

[2] In December 2014, Congress passed the Border Patrol Agent Pay Reform Act ("BPAPRA"), which created a new pay system for border patrol agents.  *See* Pub. L. No. 113-277, 128 Stat. 2995, 3005 (2014).  BPAPRA exempts border patrol agents, including canine handlers, from the FLSA's overtime provisions as of January 1, 2016.  *See* Clarification—Border Patrol Agent Pay Reform Act of 2014, Pub. L. No. 114-13, 129 Stat. 197 (2015) (clarifying that certain provisions of BPAPRA "shall take effect on the first day of the first pay period beginning on or after January 1, 2016.")

§§ 5541-5550b; 29 U.S.C. §§ 201-219.  Prior to 1974, federal employees received overtime compensation exclusively pursuant to Title V.  5 U.S.C. §§ 5541-5550; *Christofferson v. United States*, 64 Fed. Cl. 316, 319 (2005); *Aaron v. United States*, 56 Fed. Cl. 98, 100-01 (2003).  Title V authorizes eligible employees to earn 1.5 times for "work officially ordered or approved" in excess of 40 hours in an administrative workweek.  5 U.S.C. § 5542(a)(1)-(2).  But, Title V places limitations on how much an employee can earn in overtime if that employee is entitled to overtime pay under multiple statutes.  *Id.*  In this regard, Title V's implementing regulations provide in relevant part that:

> An employee entitled to overtime pay under this subpart and overtime pay under any authority outside of title 5, United States Code, shall be paid under whichever authority provides the greater overtime pay entitlement in the workweek.

5 C.F.R. § 551.513.  In addition, an employee may receive Title V premium pay "only to the extent that the payment does not cause the aggregate of basic pay and such premium pay for any pay period for such employee to exceed . . . the maximum rate of basic pay payable for GS-15."  5 U.S.C. § 5547(a)(1).

In 1974, Congress extended the FLSA to cover federal employees unless the employee was expressly exempted from coverage.  29 U.S.C. § 213(a).  In general, the FLSA requires that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1); *Abbey v. United States*, 745 F.3d 1363, 1365 (Fed. Cir. 2014).  The FLSA also authorizes employees to earn overtime pay at 1.5 times an eligible employee's pay for activities that qualify as "work" that was "suffered or permitted" in excess of a 40 hour workweek.  29 U.S.C. § 207(a)(1); 5 C.F.R. §§ 551.104, 551.401(a)(2).

### 3.    Overtime Pay Caps For Customs And Border Patrol Agents

The Federal Circuit addressed the statutory and regulatory framework that governs the compensation of customs inspectors in *Bull v. United States*, 479 F.3d 1365 (Fed. Cir. 2007).  Specifically relevant to this case, the Federal Circuit recognized that, in 1911, Congress enacted a comprehensive statutory scheme that, among other things, directed the Secretary of the Treasury to "'fix a reasonable rate of extra compensation [for customs inspectors] . . . [which]

shall not exceed an amount equal to double the rate of compensation allowed to each such officer or employee for like services rendered by day' for [customs] inspections at night, on Sundays, and on holidays." *Bull*, 479 F.3d at 1371 (quoting Act of Feb. 13, 1911, § 5, 36 Stat. 899, 901).

The 1911 Act did not, however, provide compensation for overtime work performed during customary working hours, or during the first hour after 5:00 p.m. *Id.* Given this, customs inspectors were to be compensated for overtime work pursuant to the overtime pay provisions of the FLSA or Title V. *Id.* at 1371-72 (first citing GAO Report, *Customs Service: 1911 Act Governing Overtime is Outdated*, at 49 (1991), https://www.gao.gov/assets/160/150608.pdf; then citing GAO Report, *Premium Pay for Federal Inspectors at U.S. Ports-Of-Entry*, at 3 (1975), https://www.gao.gov/assets/120/114587.pdf). And so, for work performed outside of the time periods covered by the 1911 Act, customs inspectors were eligible to earn or receive Title V overtime if the work was "officially ordered" and to earn or receive FLSA overtime if the work was "suffered or permitted." *Bull*, 479 F.3d at 1372.

In 1976, Congress shifted the financial responsibility for overtime charges incurred by customs inspectors on Sundays and holidays from private parties to the Federal Government. *See* Airport and Airway Dev. Act Amendments of 1976, Pub. L. No. 94-353, 90 Stat. 871, 882 (codified at 49 U.S.C. § 1741 (repealed)). As the Federal Circuit observed in *Bull*:

> Shortly thereafter, Congress became concerned with the financial burden being caused by the 1911 Act. According to a report by the House Committee on Appropriations, in fiscal year 1979, 2,045 Customs inspectors received over $10,000 in overtime pay, 277 Customs inspectors received over $20,000 in overtime pay, and three Customs inspectors received over $39,000 in overtime pay. H. R. Rep. No. 96-248, at 11 (1979). The Committee expressed concern not only about the high dollar amounts, but also about the "well known fact that such excessive overtime is injurious to a person's health as well as being the cause of serious family disruptions."

*Bull*, 479 F.3d at 1372.

To address these concerns, Congress enacted an annual statutory cap to limit the amount of overtime pay that a customs employee could receive. *See* Treasury Dep't Approp. Act, 1980, Pub. L. No. 96-74, 93 Stat. 559, 560 (1979). The cap provided that: "[N]one of the funds made available by this Act shall be available for administrative expenses to pay any employee [of the United States Customs Service] overtime pay in an amount in excess of $20,000." *Id.* Congress

subsequently raised the amount of this cap to $25,000 and $30,000, respectively.  *Bull*, 479 F.3d at 1373; *see* Trade and Tariff Act of 1984, Pub. L. No. 98-573, 98 Stat. 2948, 3043 (codified at 19 U.S.C. §  2075(d)); Dep't of Homeland Sec. ("DHS") Approp. Act, 2004, Pub. L. No. 108–90, Tit. I, 117 Stat. 1137, 1139 (2004).

Beginning in 1985, border patrol agents became subject to the cap on overtime compensation for customs employees.[3]  Dep'ts of Commerce, Justice, and State, the Judiciary, & Related Agencies ("DOJ") Approp. Act, 1985, Pub. L. No. 98-411, Tit. II, 98 Stat. 1545, 1556 (1984); *see also* Def. Mot. at 8-9.  In 2001, Congress briefly repealed this cap on overtime compensation due to the events of September 11, 2001.  *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism ("USA PATRIOT") Act of 2001, Pub. L. No. 107-56, Tit. IV, Subtit. A, § 404, 115 Stat. 272, 345 (2001); *see also* Def. Mot. at 10.

Since border patrol agents have become a part of the DHS, Congress has included language setting an overtime pay cap for these employees in the annual DHS Appropriations legislation.  The relevant DHS Cap provides as follows:

> [F]or fiscal year 2014, the overtime limitation prescribed in section 5(c)(1) of the Act of February 13, 1911 (19 U.S.C. 267(c)(1)) shall be $35,000; and notwithstanding any other provision of law, none of the funds appropriated by this Act shall be available to compensate any employee of U.S. Customs and Border Protection for overtime, from whatever source, in an amount that exceeds such limitation, except in individual cases determined by the Secretary of Homeland Security, or the designee of the Secretary, to be necessary for national security purposes, to prevent excessive costs, or in cases of immigration emergencies . . . .

*E.g.*, DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).

Congress has also enacted the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") to address overtime pay for customs inspectors.  Pub. L. No. 99-272, 100 Stat. 82, 310 (1986) (codified at 19 U.S.C. § 58c).  Pursuant to COBRA, the Customs Service collected

---

[3] The United States Border Patrol was founded on May 28, 1924, as an agency of the United States Department of Labor, pursuant to the Labor Appropriations Act of 1924.  *See Border Patrol History*, U.S. CUSTOMS AND BORDER PROT. (Oct. 5, 2018), https://www.cbp.gov/border-security/along-us-borders/history.  In 1933, President Franklin Roosevelt established the Immigration and Naturalization Service, which later moved to the United States Department of Justice.  *Id.*  Following the attacks of September 11, 2001, the United States Border Patrol became a part of the United States Customs and Border Protection within the DHS.  *Id.*

user fees from passengers and vessels entering the United States and the funds collected for these fees were used to pay for inspector overtime.  19 U.S.C. § 58c(f)(2); *see also* GAO Report, *Customs Service: Information on User Fees*, at 13 (1994), https://www.gao.gov/assets/90/89698.pdf.

After Congress became concerned that customs inspectors were abusing the user fee account, Congress once again enacted legislation to address overtime pay.  The Customs Officer Pay Reform Act, Pub. L. No. 103-66, 107 Stat. 312, 668-72 (1993) (codified at 19 U.S.C. § 267) ("COPRA"), provides for, among other things, double-time pay rates for "officially assigned" work in excess of 40 hours per week or eight hours in a day.  19 U.S.C. § 267(a)(1).  The Federal Circuit has observed that "[i]t was Congress' intent that this new pay-rate regime, coupled with the promulgation of Treasury Department regulations designed to prevent abuse of the overtime system, would mirror [Title V] and FLSA in the sense that payments would reflect the amount of time actually worked."  *Bull*, 479 F.3d at 1374; *see also* 19 U.S.C. § 267(d); 19 C.F.R. § 24.16(c)-(g).

Congress also limited eligibility for these increased hourly rates to "customs inspector[s] [and] canine enforcement officer[s]."  19 U.S.C. § 267(e)(1).  To that end, COPRA contains an exclusivity provision which provides that:

> A customs officer who receives overtime pay under subsection (a) or premium pay under subsection (b) for time worked may not receive pay or other compensation for that work under any other provision of law.

19 U.S.C. § 267(c)(2).  In addition, COPRA prohibits any customs officer, as defined in 19 C.F.R. § 24.16(b)(7), from receiving more than $35,000 in annual overtime pay.  19 U.S.C. § 267(c)(1).

### B.    Procedural History

On October 21, 2016, plaintiffs filed the complaint in this matter, which plaintiffs subsequently amended on November 9, 2016; December 22, 2016; January 19, 2017; February 27, 2017; and March 15, 2017.  *See generally* Compl.; 1st Am. Compl.; 2d Am. Compl.; 3d Am. Compl.; 4th Am. Compl.; 5th Am. Compl.  On May 9, 2017, plaintiffs filed a consent motion to dismiss the claims of 27 plaintiffs and to re-caption this matter, which the Court granted on March 22, 2018.  *See generally* Pl. Consent Mot.; Order, dated March 22, 2018.

On April 23, 2018, the parties filed a joint status report advising the Court that they have executed a settlement agreement resolving the claims of 59 of the 62 plaintiffs in this matter and requesting briefing on the issue of whether the DHS Cap applies to the remaining plaintiffs' overtime pay claims. *See generally* Joint Status Report, dated April 23, 2018. On May 4, 2018, the government filed a motion for partial summary judgment on appropriations caps. *See generally* Def. Mot. for Summ. J. On May 7, 2018, the government filed a corrected motion for partial summary judgment on appropriations caps. *See generally* Def. Mot.

On June 1, 2018, plaintiffs filed an opposition to the government's corrected motion for partial summary judgment and a cross-motion for partial summary judgment on appropriations caps. *See generally* Pl. Mot. On July 20, 2018, the government filed a reply in support of its corrected motion for partial summary judgment on appropriations caps and a response to plaintiffs' cross-motion for partial summary judgment. *See generally* Def. Resp.

On August 24, 2018, plaintiffs filed a reply in support of its cross-motion for partial summary judgment on appropriations caps. *See generally* Pl. Reply. On September 17, 2018, the government filed a sur-reply in support of its corrected motion for partial summary judgment on appropriations caps. *See generally* Def. Reply.

The Court held oral argument on the parties' cross-motions on December 18, 2018. *See generally* Oral Arg. Tr. These matters having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756, 98 S. Ct. 2081, 56 L. Ed. 2d 677 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . .") (citations omitted). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subs. v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### B.     Title V And The FLSA

Congress first enacted the Federal Employees Pay Act, or Title V, in 1945. *See generally* Federal Employees Pay Act of 1945, Pub. L. No. 79-106, 59 Stat. 295 (June 30, 1945); *Doe v. United States*, 372 F.3d 1347, 1351 (Fed. Cir. 2004) (citing 5 U.S.C. § 5542(a)). Prior to 1974, when the FLSA became applicable to federal employees, federal employees received overtime compensation exclusively pursuant to Title V. 5 U.S.C. §§ 5541-5550; *Christofferson v. United States*, 64 Fed. Cl. 316, 319 (2005); *Aaron v. United States*, 56 Fed. Cl. 98, 100-01 (2003). Title V provides, in part, that:

> For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for . . . at [the rates provided in 5 U.S.C. § 5542(a)(1)-(5)].

5 U.S.C. § 5542(a).  In 1974, Congress extended the FLSA to include federal employees unless the employee is expressly exempted from coverage under the Act.  29 U.S.C. § 213(a).  In general, the FLSA requires that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1); *Abbey v. United States*, 745 F.3d 1363, 1365 (Fed. Cir. 2014).

### C.     The DHS Cap

Since 2005, Congress has included the following language establishing an overtime pay cap of $35,000 for CBP employees in the annual DHS appropriations bills:

> [F]or fiscal year 2014, the overtime limitation prescribed in section 5(c)(1) of the Act of February 13, 1911 (19 U.S.C. 267(c)(1)) shall be $35,000; and notwithstanding any other provision of law, none of the funds appropriated by this Act shall be available to compensate any employee of U.S. Customs and Border Protection for overtime, from whatever source, in an amount that exceeds such limitation, except in individual cases determined by the Secretary of Homeland Security, or the designee of the Secretary, to be necessary for national security purposes, to prevent excessive costs, or in cases of immigration emergencies. . . .

*E.g.*, DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).  The Federal Circuit has recently recognized that if Congress wants to suspend or repeal a statute in force, "there can be no doubt that . . . it could accomplish its purpose by an amendment to an appropriation bill, or otherwise."  *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1323 (Fed. Cir. 2018), *reh'g denied*, 908 F.3d 738 (Fed. Cir. 2018) (citation omitted); *see also United States v. Will*, 449 U.S. 200, 221-22 (1980) (quoting *United States v. Dickerson*, 310 U.S. 554, 555 (1940)).  The Federal Circuit has also recognized that whether an appropriations bill impliedly suspends or repeals substantive law "'depends on the intention of Congress as expressed in the statutes.'"  *Moda*, 892 F.3d at 1323 (quoting *United States v. Mitchell*, 109 U.S. 146, 150 (1883)).  Specifically, Congress' intention must be "expressed in the most clear and positive terms, and where the language admits of no other reasonable interpretation."  *Minis v.*

*United States* 40 U.S. 423, 445 (1841).  And so, legislative history and previous appropriations can provide persuasive evidence of Congress' intent.  *Dickerson*, 310 U.S. at 561 (holding that Congress intended to suspend certain reenlistment bonuses during fiscal year 1939 by enacting appropriations riders.)

### D.      COPRA And Its Implementing Regulations

The Customs Officer Pay Reform Act provides for, among other things, double-time pay rates for "officially assigned" work in excess of forty hours per week or eight hours in a day.  19 U.S.C. § 267(a)(1).  COPRA limits the eligibility for increased hourly rates to "customs inspector[s][and] canine enforcement officer[s]."  19 U.S.C. § 267(e)(1).  The Act also includes an exclusivity provision which provides that:

> A customs officer who receives overtime pay under subsection (a) or premium pay under subsection (b) for time worked may not receive pay or other compensation for that work under any other provision of law.

19 U.S.C. § 267(c)(2).  In addition, COPRA prohibits any customs officer from receiving more than $25,000 in annual overtime pay.  19 U.S.C. § 267(c)(1).

The regulation implementing COPRA's cap on overtime pay is set forth in 19 C.F.R. § 24.16(h) and provides that:

> Total payments for overtime/commute, and differentials for holiday, Sunday, and night work that a Customs Officer is paid shall not exceed any applicable fiscal year pay cap established by Congress.  The Commissioner of Customs or the Commissioner's designee may waive this limitation in individual cases to prevent excessive costs or to meet emergency requirements of the Customs Service. However, compensation awarded to a Customs Officer for work not performed, which includes overtime awards during military leave or court leave, continuation of pay under workers compensation law, and awards made in accordance with back pay settlements, shall not be applied to any applicable pay cap calculations.

19 C.F.R. § 24.16(h).  This regulation also defines a "Customs Officer" as follows:

> Customs Officer means only those individuals assigned to position descriptions entitled "Customs Inspector," "Supervisory Customs Inspector," "Canine Enforcement Officer," "Supervisory Canine Enforcement Officer," "Customs and Border Protection Officer," "Supervisory Customs and Border Protection Officer," "Customs and Border Protection Agriculture Specialist," or "Supervisory Customs and Border Protection Agriculture Specialist."

19 C.F.R. § 24.16(b)(7).

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for partial summary judgment on the issue of whether the DHS Cap limits their eligibility to receive overtime pay for each fiscal year within the claim period for this case. *See generally* Def. Mot.; Pl. Mot.  In its corrected motion for partial summary judgment, the government argues that the DHS Cap limits plaintiffs' eligibility for overtime pay during each fiscal year within the claim period, because Congress has clearly expressed its intent to limit plaintiffs' overtime pay in DHS appropriations legislation.  Def. Mot. at 20-27.  And so, the government contends that the DHS Cap places a limit on the maximum amount of overtime pay that plaintiffs can earn or receive—from whatever source and notwithstanding any other provision of law—absent a waiver of that cap.  *Id.* at 22-24.

In their cross-motion for partial summary judgment, plaintiffs counter that the DHS Cap does not waive their right to receive overtime pay under the FLSA, or permit the government to require them to work without compensation, because this appropriations cap limits the number of hours that plaintiffs may work rather than the amount of pay that plaintiffs may earn or receive.  Pl. Mot. at 8-19.  Plaintiffs also counter that they may receive overtime pay in excess of the DHS Cap under the Settlement Agreement, because back-pay settlements are excluded from the calculation of the DHS Cap and any settlement payment would be paid from the Judgement Fund.  *Id.* at 19-24.  And so, plaintiffs contend that they should be compensated for all overtime suffered or performed within the claim period, notwithstanding the limitations placed on overtime pay under the DHS Cap.  *Id.* at 13-14.

For the reasons set forth below, the plain language of the DHS Cap makes clear that this appropriations cap limits the annual amount of plaintiffs' overtime pay and that plaintiffs may not receive a back-pay settlement amount that would exceed the appropriations cap.  And so, the Court:  (1) **GRANTS** the government's corrected motion for partial summary judgment on appropriations caps; (2) **DENIES** plaintiff's cross-motion for partial summary judgment on appropriations caps; and (3) **DENIES AS MOOT** the government's motion for partial summary judgment on appropriations caps.

**A.     Congress Has Clearly Expressed Its Intent To Cap Plaintiffs' Overtime Pay**

**1.     The Plain Language Of The DHS Cap Shows Congress'
Intent To Limit The Amount Of Plaintiffs' Overtime Pay**

As an initial matter, a careful reading of the plain language of the DHS Cap makes clear

that Congress intended to limit the amount of plaintiffs' annual overtime pay.  It is well-

established that Congress may amend a pre-existing statutory obligation through appropriations

legislation if its intent to do so is clear.  *United States v. Dickerson*, 301 U.S. 554, 555 (1940);

*see also Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1322-23 (Fed. Cir. 2018), *reh'g

denied*, 908 F.3d 738 (Fed. Cir. 2018) ("*Moda*") (holding that Congress has the ability to

suspend or repeal a statute by enacting "an amendment to an appropriation bill, or otherwise");

*United States v. Will*, 449 U.S. 200, 221-22 (1980) (quoting *Dickerson*, 310 U.S. at 555).  It is

also well-established that the plain language of an appropriations action, coupled with the

legislative history, is evidence of Congress' intent.  *Will*, 449 U.S. at 221-22.  And so, the

Court's determination of whether Congress intended for the DHS Cap to amend pre-existing

statutory obligations for the government to compensate plaintiffs for overtime under the FLSA in

this case, depends upon the intention of Congress as expressed in the appropriations legislation

and the legislative history.  *Moda*, 892 F.3d at 1323 (quoting *United States v. Mitchell*, 109 U.S.

146, 150 (1883)); *see also Minis v. United States* 40 U.S. 423, 445 (1841); *Barela v. Shinseki*,

584 F.3d 1379, 1382-83 (Fed. Cir. 2009) (citation omitted) (holding that the Court must "start[]

with the plain language.").

A reading of the DHS Cap demonstrates that Congress clearly intended to limit the

amount of annual overtime pay that plaintiffs may earn or receive.  Specifically, the DHS Cap

provides, in relevant part, that:

> [F]or fiscal year 2014, the overtime limitation prescribed in section 5(c)(1) of the
> Act of February 13, 1911 (19 U.S.C. 267(c)(1)) shall be $35,000; and
> notwithstanding any other provision of law, none of the funds appropriated by this
> Act shall be available to compensate any employee of U.S. Customs and Border
> Protection for overtime, from whatever source, in an amount that exceeds such
> limitation, except in individual cases determined by the Secretary of Homeland
> Security, or the designee of the Secretary, to be necessary for national security
> purposes, to prevent excessive costs, or in cases of immigration emergencies . . . .

*E.g.* DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014). The DHS Cap contains several phrases that make clear that Congress intended for this appropriations cap to limit the amount of annual overtime pay that plaintiffs may earn or receive, regardless of the source of that pay.

First, the text of the DHS Cap demonstrates Congress' clear intent to establish a maximum limit on the amount of overtime pay that plaintiffs may earn or receive during a given fiscal year. In this regard, the DHS Cap provides that "the overtime limitation prescribed . . . shall be $35,000." *Id.* And so, the plain text of the DHS Cap makes clear that Congress placed a limit of $35,000 on the amount of annual overtime pay that plaintiffs and other CBP employees may earn or receive.[4]

Congress' intent to limit the amount of plaintiffs overtime pay is also expressed in other language in the DHS Cap. Specifically, the DHS Cap states that "none of the funds appropriated by this Act shall be available to compensate any employee for overtime, from whatever source, in an amount that exceeds such limitation." *Id.* This language similarly reflects Congress' intent to limit the amount of overtime pay for CBP employees to no more than $35,000 annually. *Id.* And so, the Court reads the plain language in the DHS Cap to express Congress' clear intent to prohibit plaintiffs from earning or receiving overtime pay in excess of $35,000 per fiscal year, absent a waiver of the appropriations cap.

The text of the DHS Cap also demonstrates Congress' clear intent to limit the amount of overtime pay that plaintiffs may earn or receive regardless of the source of that pay. Notably, Congress required that the limit on overtime pay shall be $35,000 "*notwithstanding any other provision of law*." *Id.* (emphasis supplied). The DHS Cap also requires that none of the funds appropriated shall be available to compensate for overtime "*from whatever source*." *Id.* (emphasis supplied). Congress' use of this language is compelling evidence that the Congress was both well-aware that CBP employees may receive overtime pay pursuant to other pre-existing statutes and that Congress intended to limit the annual amount of overtime pay,

---

[4] In *Grover v. OPM*, 828 F.3d 1378 (Fed. Cir. 2016), the Federal Circuit recognized that a similar statutory limit on annual overtime pay prescribed in COPRA established a "statutory maximum" for annual overtime pay that could not be exceeded. *Grover*, 828 F.3d at 1380 (quoting 5 U.S.C. § 8331(4)).

notwithstanding these other laws.[5]  And so, the Court reads the plain language of the DHS Cap to express the intent of Congress to impose an annual cap on the amount of plaintiffs' overtime pay, regardless of whether the FLSA or other statutory authorities would otherwise permit plaintiffs to earn or receive additional overtime compensation.

<strong>2.      The Legislative History Reflects Congress'<br>Intent To Limit The Amount Of Plaintiffs' Pay</strong>

The legislative history relevant to overtime compensation for CBP employees also demonstrates that Congress clearly intended to limit the amount of plaintiffs' overtime pay, regardless of the source of that pay.  As the Federal Circuit observed in *Bull v. United States*, 479 F.3d 1365 (Fed. Cir. 2007), there is a long history of Congress imposing a cap on overtime pay for CBP employees.  *Bull*, 479 F.3d at 1370-75.  The legislative history shows that Congress imposed a cap on overtime pay for customs inspectors to address specific concerns about the increasing amount of overtime pay being earned by customs inspectors and the growing number of hours worked by these employees.  *Id.*  As the Federal Circuit observed in *Bull*:

> According to a report by the House Committee on Appropriations, in fiscal year 1979, 2,045 Customs inspectors received over $10,000 in overtime pay, 277 Customs inspectors received over $20,000 in overtime pay, and three Customs inspectors received over $39,000 in overtime pay.  H. R. Rep. No. 96-248, at 11 (1979).  The Committee expressed concern not only about the high dollar amounts, but also about the "well known fact that such excessive overtime is injurious to a person's health as well as being the cause of serious family disruptions."

*Id.* at 1372.

The legislative history also makes clear that Congress has consistently imposed a cap on the amount of annual overtime pay for border patrol agents for decades.  *See, e.g.*, DOJ Approp. Act, 1985, Tit. II, Pub. L. No. 98-411, 98 Stat. 1545, 1556 (1984).  Congress has also adjusted the amount of this cap periodically.  Def. Mot. at 8-10.  Notably, Congress increased the amount

---

[5] During oral argument, plaintiffs argued that the references to "overtime" in the DHS Cap show that Congress intended for the DHS Cap to limit the number of overtime hours worked by plaintiffs and other border patrol agents.  Oral Arg. Tr. at 11:6-11:21.  But, the text of the DHS Cap neither mentions hours worked, nor limits the number of hours that a CBP employee may work.  DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).  In addition, while plaintiffs correctly note that the legislative history includes references to Congress' concerns about excessive overtime hours, the legislative history also makes clear that Congress was significantly concerned about the amount of overtime pay that CBP employees were earning and receiving each year.  *Bull v. United States*, 479 F.3d 1365, 1372 (Fed. Cir. 2007).

of the cap in 1985, 1986, 1987, 1997, 2005 and 2017.  *See* DOJ Approp. Act, 1985, Pub. L. No. 98-411, Tit. II, 98 Stat. 1545, 1556 (1984); DOJ Approp. Act, 1986, Pub. L. No. 99-180, Tit. II, 99 Stat. 1136, 1144 (1985); DOJ Approp. Act, 1987, Pub. L. No. 99-500, Tit. II, 100 Stat. 1783, 1783-48 (1986); DOJ Approp. Act, 1997, Pub. L. No. 104-208, Div. A, Tit. II, 110 Stat. 3009, 3009-10 (1996); DHS Approp. Act of 2005, Pub. L. No. 108-334, Tit. II, 118 Stat. 1298, 1300 (2004); DHS Approp. Act, 2017, Pub. L. No. 115-31, Div. F, Tit. II, 131 Stat. 244, 411 (2016). In addition, in 2001, Congress briefly repealed the cap on overtime pay due to the events of September 11, 2001.  *See* USA PATRIOT Act of 2001, Pub. L. No. 107-56, Tit. IV, Subtit. A, § 404, 115 Stat. 272, 345 (2001) (striking cap ceiling in fiscal year 2001 appropriations); *see also* H.R. Rep. No. 107-236, pt. 1, at 76 (2001) ("This section removes the limitation on overtime pay that was included in DOJ Appropriations Act for 2001 for border patrol and other INS agents.") And so, the extensive legislative history regarding legislation enacted by the Congress to cap the annual overtime pay of CBP employees provides additional evidence that Congress has expressed its intent to limit the amount of overtime pay that plaintiffs may receive in this case.[6]

### B.    Federal Circuit Precedent Supports Applying The DHS Cap To Plaintiffs' Claims

The Court's reading of the DHS Cap and the legislative history to limit plaintiffs' overtime pay, regardless of the source of that pay, is also in line with Federal Circuit precedent related to the compensation of CBP employees.  While the Federal Circuit has not addressed the specific question of whether the DHS Cap limits the amount of annual overtime pay for border patrol agents, the Federal Circuit has addressed whether a similar cap on annual overtime pay set forth in COPRA applies when a CBP employee is eligible to receive overtime pay under other federal statutes.  *See Bull*, 479 F.3d at 1378; *Grover v. OPM*, 828 F.3d 1378, 1380, 1383 (Fed. Cir. 2016).

Specifically, in *Bull v. United States*, the Federal Circuit held that the amount of overtime pay that customs officers could earn or receive could not exceed the annual statutory cap on annual overtime pay set forth in COPRA, notwithstanding the fact that certain CBP employees

---

[6] Congress' intent to address concerns about excessive overtime pay is also reflected in other legislation enacted by the Congress to address overtime pay for customs officers.  *See e.g.*, Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82, 310 (1986) (codified at 19 U.S.C. § 58c); Customs Officer Pay Reform Act, H.R. 3837, 103rd Cong., 107 Stat. 312, 668-672 (1993).

were also eligible to receive overtime pay under the FLSA.  *Bull*, 479 F.3d at 1378.  Similarly, in *Grover v. United States*, the Federal Circuit held that a customs officer could not receive overtime pay in excess of the amount prescribed in COPRA, because the statutory maximum for the years in question under the COPRA cap was $35,000.  *Grover*, 828 F.3d at 1380, 1383.  And so, *Bull* and *Grover* generally recognize that Congress may limit the amount of annual overtime pay that may be earned or received by CBP employees through legislation, notwithstanding the fact that such employees may also be eligible to earn or receive overtime pay under other federal laws.

> **C.  Plaintiffs Have Not Shown That They May Avoid The DHS Cap Through The Settlement Of This Litigation**

> **1.  Plaintiffs Cannot Circumvent The DHS Cap Because They Are Eligible To Receive Overtime Pay Under The FLSA**

The Court is also not persuaded by plaintiffs' argument that they may receive overtime pay in excess of the DHS Cap in connection with the settlement of this litigation, because this cap does not waive their rights under the FLSA or permit the government to require them to work without compensation.  Pl. Mot. at 13-18.  As discussed above, the plain language of the DHS Cap expresses Congress' clear intent to limit the amount of plaintiffs' annual overtime pay from whatever source—including the FLSA.  DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).  And so, plaintiffs' eligibility to earn or receive overtime pay under the FLSA cannot circumvent the limit on the amount of annual overtime pay that plaintiffs may earn or receive imposed by Congress.  *Cf. Bull*, 479 F.3d at 1378.

Plaintiffs' argument that the overtime pay provisions in the DHS Cap should be read *in pari materia* with the FLSA—and construed to limit the number of overtime hours, rather than the amount of overtime pay—is equally unavailing.  Pl. Mot. at 12-13.  There can be no dispute that Congress enacted the FLSA to provide for overtime pay for various categories of federal employees—including employees of the CBP.  *See* 29 U.S.C. §§ 201-219.  But, as the government persuasively argues in its corrected motion for partial summary judgment, Congress has enacted specific legislation to limit the amount of such pay for CBP employees.  Def. Mot. at 26; s*ee also* DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).  The Federal Circuit has long recognized that the specific terms of a statute will prevail over more general terms in another statute which otherwise might be controlling, regardless of

the priority of enactment of the two statutes. *Thiess v. Witt*, 100 F.3d 915, 919 (Fed. Cir. 1996) (citations omitted). And so, here, the specific provisions in the DHS Cap, which limit the amount of annual overtime pay for CBP employees, control the general statutory authority to pay plaintiffs overtime pay under the FLSA.[7]

### 2.    Plaintiffs' Reliance Upon COPRA And Its Implementing Regulations Is Misplaced

Plaintiffs also improperly rely upon COPRA and its implementing regulations to support their argument that they may receive overtime pay in excess of the DHS Cap in connection with the settlement of this case. In their cross-motion, plaintiffs argue that the regulation implementing COPRA's premium pay cap explicitly excludes back-pay settlements from the COPRA pay cap calculations. Pl. Mot. at 19-21. And so, plaintiffs contend that their back-pay settlement payments should similarly be excluded from the calculation of the DHS Cap. *Id.*

Plaintiffs' reliance upon COPRA and its implementing regulations is misplaced for two reasons. First, the COPRA premium pay regulation does not apply to plaintiffs because they are not customs officers. Indeed, a careful reading of COPRA and this regulation makes clear that these authorities only apply to customs officers. In this regard, COPRA provides that:

> A *customs officer* who receives overtime pay under subsection (a) or premium pay under subsection (b) for time worked may not receive pay or other compensation for that work under any other provision of law.

19 U.S.C. § 267(c)(2) (emphasis supplied).

COPRA's premium pay regulation also provides, in relevant part, that:

> (e) Overtime pay.

> (1) A *Customs Officer* who is officially assigned to perform work in excess of the 40 hours in the officer's regularly-scheduled administrative workweek or in excess of 8 hours in a day shall be compensated for such overtime work performed at 2 times the hourly rate of the officer's base pay, including any locality pay, but not including any premium pay differentials for holiday, Sunday, or night work.

---

[7] Plaintiffs also cite no support for their argument that Congress must seek a waiver of the FLSA in order to limit their overtime pay. Pl. Mot. at 12-13.

19 C.F.R. § 24.16(e)(1) (emphasis supplied).  The regulation also makes clear that border patrol agents that are canine handlers—like the plaintiffs in this case—are not customs officers. 19 C.F.R. § 24.16(b)(7).  Notably, the regulation provides that:

> Customs Officer means only those individuals assigned to position descriptions entitled "Customs Inspector," "Supervisory Customs Inspector," "Canine Enforcement Officer," "Supervisory Canine Enforcement Officer," "Customs and Border Protection Officer," "Supervisory Customs and Border Protection Officer," "Customs and Border Protection Agriculture Specialist," or "Supervisory Customs and Border Protection Agriculture Specialist."

*Id.*  And so, plaintiffs cannot rely upon COPRA, or the premium pay cap regulation, to support their claim.

The Federal Labor Relations Authority ("FLRA") cases cited by plaintiffs similarly fail to support their argument that any back-pay settlement in this case should be excluded from the calculation of their overtime pay under the DHS Cap.  Pl. Mot. at 20.  Plaintiffs argue that the FLRA has recognized that back-pay settlements "do not count toward the otherwise applicable [overtime pay] cap."  *Id.* (emphasis omitted).  But, the cases cited by plaintiffs to support this view pertain to the treatment of back-pay settlements within the context of the annual overtime pay cap set forth in COPRA, rather than the DHS Cap.  Because, as discussed above, COPRA and its implementing regulations do not apply to plaintiffs, the Court does not read the FLRA cases cited by plaintiffs to bolster their claim.  19 U.S.C. §  267(c)(1).[8]

### 3.   Alternative Sources Of Funding Are Not Available For Overtime Pay In Excess Of The DHS Cap

Plaintiffs' arguments that they may receive overtime pay in excess of the DHS Cap, because the government will use the Judgment Fund to pay any back-pay settlement and such a back-pay settlement payment would not violate the Anti-Deficiency Act, are equally unavailing. Pl. Mot. at 21-26.

---

[8] The Court does not read the FLRA cases cited by plaintiffs to hold that the COPRA statute and its implementing regulations would apply to border patrol agents, as plaintiffs suggest.  Pl. Mot. at 20; *see also U.S. Dep't of Homeland Sec. U.S. Customs & Border Protect. Border Patrol San Diego Sector San Diego, Cal. and AFGE Nat'l Border Patrol Council Local 1613*, 68 F.L.R.A. 128, 132 (2014); *U.S. Dep't of the Treasury, U.S. Customs Serv., El Paso, Tex. and Nat'l Treasury Emps. Union Chapter 143*, 55 F.L.R.A. 553, 560 (1999).

First, plaintiffs' reliance upon the Judgment Fund to show that they may earn or receive overtime pay in excess of the DHS Cap is misplaced.  It is well-established that Congress enacted the Judgment Fund to pay final judgments upon a finding of liability in connection with litigation against the government.  31 U.S.C. § 1304(a); *Moda*, 892 F.3d at 1326.  But, as the Federal Circuit recently recognized in *Moda*, the Judgment Fund is not an all-purpose fund for the disbursement of government funds.  *Moda*, 892 F.3d at 1326.

As discussed above, the plain language of the DHS Cap and the legislative history make clear that Congress intended to limit the amount of plaintiffs' annual overtime pay, from whatever source, absent a waiver of this cap.  *See* DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).  Given the clear intent of Congress, permitting plaintiffs to circumvent the DHS Cap because they have entered into a back-pay settlement with the government would create the absurd result of allowing plaintiffs to receive more overtime pay than they would otherwise be entitled simply because plaintiffs commenced this litigation.[9]  The Court views such a result to be contrary to what Congress plainly intended by consistently enacting legislation to cap the amount of annual overtime pay that border patrol agents may earn or receive.

Second, the government persuasively argues that the Anti-Deficiency Act prohibits any payment of overtime in an amount that would exceed the DHS Cap.[10]  Def. Mot. at 29-30.  In

---

[9] Use of the Judgment Fund to pay plaintiffs more than would be permitted under the DHS Cap would also appear to run afoul of the "from whatever source" language contained in the DHS Cap.  DHS Approp. Act, 2014, Pub. L. No. 113-76, Div. F., Tit. II, 128 Stat. 5, 249 (2014).

[10] The Anti-Deficiency Act provides that:

> (a) (1) An officer or employee of the United States Government or of the District of Columbia government may not—
>> (A)  make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;
>>
>> (B)  involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law;
>>
>> (C)  make or authorize an expenditure or obligation of funds required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985; or

*Prairie County, Montana v. United States*, 782 F.3d 685 (Fed. Cir. 2015), the Federal Circuit held that language in the Payment in Lieu of Taxes Act ("PILT") that limited the payments called for under that Act to those funds that had been appropriated by Congress for that purpose, limited the government's liability to make such payments to the amount appropriated by Congress. *Prairie Cty.*, 782 F.3d at 686.  The Federal Circuit also recognized in *Prairie County* that the government's statutory obligation to make payments under the PILT was distinguishable from the government's obligation to make payments pursuant to a contract, under circumstances where there had been a lapse in federal appropriations. *Id.*; *cf. Salazar v. Ramah Navajo Chapter*, 567 U.S. 182 (2012); *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631 (2005) (holding that the government had a contractual obligation to pay tribes contract supports costs). And so, the Federal Circuit concluded that the government had no obligation to make payments under the PILT if funds had not been appropriated by Congress for that purpose. *Prairie Cty.*, 782 F.3d at 690-91.

Similarly, here, the government's obligation to pay plaintiffs for overtime suffered or performed arises under a statute—the FLSA—and Congress has limited this statutory obligation with respect to CBP employees by enacting appropriations legislation that caps the annual amount of their overtime pay.  While plaintiffs certainly make a sympathetic argument that they should not be required to work without compensation after reaching the limit of the DHS Cap, Congress has made a policy decision to limit the amount of plaintiffs' annual overtime pay under such circumstances.  Pl. Mot. at 9-10.  And so, the wisdom of such policy judgments regarding the DHS Cap is appropriately left to be determined by the legislative branch.  Oral Arg. Tr. at 40:6-40:22.

Because the plain language of the DHS Cap and the relevant legislative history show that Congress has expressed its clear intent to limit the amount of annual overtime pay that plaintiffs may earn or receive—from whatever source—the Court **GRANTS** the government's corrected motion for partial summary judgment on appropriations caps and **DENIES** plaintiff's cross-motion for partial summary judgment on appropriations caps.  RCFC 56.

---

(D)   involve either government in a contract or obligation for the payment of money required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985.

31 U.S.C. § 1341(a)(1).

**V.      CONCLUSION**

In sum, plaintiffs have not shown that they are entitled to receive overtime pay in connection with the settlement of this litigation that is in excess of the applicable cap on annual overtime pay set forth in DHS appropriations legislation.  Rather, the plain language of the DHS Cap and the legislative history make clear that Congress intended to limit the amount of overtime pay that plaintiffs may earn or receive during each fiscal year, absent a waiver of that cap.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's corrected motion for partial summary judgment on appropriations caps;

2. **DENIES** plaintiff's cross-motion for partial summary judgment on appropriations caps; and

3. **DENIES AS MOOT** the government's motion for partial summary judgment on appropriations caps.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge